# UNITED STATES DISTRICT COURT

**SEALED**

SOUTHERN     DISTRICT OF     WEST VIRGINIA

**FILED**

2 3 2007

T...ESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES OF AMERICA
v.
TERRY HEADEN
JERRY HEADEN
JOHN GRAVELY JR.
CHRISTOPHER GROSS

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

Case Number:   1:07-mj-0066

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief. From in or about 2004 to present in McDowell and Mercer Counties, in

(Date)

the     Southern     District of     West Virginia, and elsewhere     defendants did,

*(Track Statutory Language of Offense)*

knowingly and intentionally conspire to commit offenses in violation of 21 U.S.C. § 841(a)(1), that is, knowingly and intentionally to distribute and possess with intent to distribute quantities of oxycodone, a Schedule II controlled substance

in violation of Title     21     United States Code, Section(s)     846     .

I further state that I am a(n)     Task Force Officer     and that this complaint is based on the

Official Title

following facts:

See attached.

Continued on the attached sheet and made a part of this complaint: ☒ Yes   ☐ No

_____
Signature of Complainant

William T. Jones
Printed Name of Complainant

Sworn to before me and signed in my presence,

July 23, 2007
Date

at     Beckley, WV
City and State

R. Clarke VanDervort
Name and Title of Judge

_____
Signature of Judge

**A F F I D A V I T**

STATE OF WEST VIRGINIA,

COUNTY OF RALEIGH, TO-WIT:

I, William T. Jones, being duly sworn, hereby depose and say:

1.     I have been employed by the Bluefield Police Department in Bluefield, West Virginia, for the past 27 years.  I currently hold the rank of Sergeant. Since 2000, I have been assigned to the Southern Regional Drug and Violent Crime Task Force.  In 2006, I was deputized as a federal Task Force Officer (TFO) of the United States Drug Enforcement Administration (hereinafter "DEA"), where I am assigned to the Charleston, West Virginia, Resident Office.

2.     I am the case agent investigating Terry Headen, Jerry Headen, John Gravely Jr., Christopher Gross, and others regarding an on-going oxycodone conspiracy in McDowell County, Mercer County, and elsewhere.

3.     Law enforcement officers have been investigating Terry and Jerry Headen, who are commonly referred to as "the Headen twins" for years.  For the past three years law enforcement officers have made several controlled buys from the Headen Twins or associates of the Headen Twins.

4.     In May of 2007 I applied for wiretap authorization on Terry Headen's cellular telephone.  The application was approved by Chief United Stated District Judge David A. Faber.  The DEA continues to monitor Terry Headen's cellular telephone pursuant to court order.

5.     Evidence gathered since May 29, 2007 (the date of the original wire authorization), reveals that John Gravely, Jr. is supplying the Headen twins with large quantities of oxycodone, and further reveals that Christopher Gross sells large quantities of oxycodone independently and on behalf of the Headen twins.  These four individuals are working in concert.

6.     Gravely is from Detroit, Michigan, and maintains an apartment in Mercer County, West Virginia.  The Headen twins and Christopher Gross are from McDowell County and maintain property in McDowell and/or Mercer Counties.

7.   The hierarchy of the organization is this:  John Gravely Jr. is the main supplier of oxycodone to Terry and Jerry Headen. Terry and Jerry Headen are significant distributors of oxycodone in southern West Virginia.  Christopher Gross is a significant dealer who occasionally supplies the Headens with oxycodone and frequently sells for the Headens.

8.   A number of recorded telephone calls support the above-referenced theory.  For example:

a.   On June 1, 2007 Terry Headen called John Gravely Jr. to see if Gravely was on his way to Bluefield, West Virginia, from Detroit, Michigan.  This call was recorded on the Title III equipment recording Terry Headen's cellular phone number (304) 320-3105.  This call session was documented as number 259.  Gravely advised Headen he was going to leave that day.  Terry Headen asked Gravely if he could bring 3,500 and if not, at least three (believed to be mean 3,000).  The amounts they were referring to are believed to be the number of oxycodone pills Terry Headen wanted Gravely to bring.

b.   On June 2, 2007, Terry Headen received a call from John Gravely Jr.  Headen advised that if he (Gravely) could get there (to McDowell County) that day and could stay for about one hour, he (Terry Headen) could make Gravely $40,000.  This call was recorded from the Title III on the cellular phone of Terry Headen and documented on call session number 388.

c.   On June 3, 2007, John Gravely called Terry Headen and said he would be in Bluefield, West Virginia, that day and would have the three (believed to mean 3,000 oxycodone pills).  This call was recorded on the Title III recording device and is call session number 558.

d.   On June 4, 2007, John Gravely called Terry Headen and stated he was waiting for more (believed to mean more oxycodone pills) and he (Gravely) would have Terry Headen's three (believed to mean 3,000 oxycodone pills) sometime the next day.  This call was recorded on the Title III recording equipment and was call session number 686.

2

e. On June 7, 2007, John Gravely called Terry Headen and stated he only had 2,800 pills. Gravely advised that he was in Bluefield, West Virginia, and Terry Headen stated that he would meet Gravely. This phone call was recorded on the Title III recording device and was call session number 1025. Shortly thereafter, officers observed both Jerry and Terry Headen meeting with John Gravely in the parking lot of the 304 Club in Bluefield, West Virginia.

f. On June 12, 2007, Terry Headen talked with John Gravely Jr. and advised Gravely he (Headen) was ready for more pills. Gravely advised Headen that in a couple of days there would be more. This call was recorded on the Title III recording device and was call session number 1522.

g. On June 14, 2007, Terry Headen received an incoming call from John Gravely Jr. Headen advised Gravely to get as many (believed to be pills) as he (Gravely) could get. Headen advised Gravely he would pay $45.00 per pill. Gravely advised Headen he only had 1,900 pills, but he was working on trying to get more. This call was monitored and recorded on the Title III recording equipment and is call session number 1825.

h. On June 24, 2007, John Gravely Jr. called Terry Headen and stated he was almost in Bluefield. Headen advised he would be ready as soon as Gravely got to Bluefield. Gravely advised Headen the cost was 117 (believed to mean $117,000). This call was monitored and recorded on the Title III recording device and was call session number 2911. Later that same date Terry Headen called Gravely and Headen tried to talk Gravely down on his prices. Headen advised he could pay sixty (meaning $60,000) when he picked the pills up, and pay the rest the next day for a total of $117,000. Headen called back and advised Gravely they had eighty (meaning $80,000) and they could pay him when they met. Gravely and Headen agreed to meet at the old football field going up Elkhorn Mountain in McDowell County, West Virginia. All of these calls were recorded on the Title III recording equipment and were call session numbers 2914, 2921 and 2923.

3

Surveillance was conducted. Due to the location, officers were unable to drive by the football field. However, officers observed Gravely going onto the roadway leading to the field and coming back onto U. S. Route 52 shortly thereafter.

i.  On June 25, 2007, John Gravely Jr. called Terry Headen to let him know he (Gravely) was ready to go. Gravely talked about receiving the $80,000 from Terry Headen and being owed $37,000 more. Headen agreed and stated he (Headen) would have his girlfriend (Brooke BROWN) bring the money to Bluefield. This call was recorded on the Title III recording device recording Terry Headen's cell phone. Other calls were made between Headen and Gravely throughout the day. John Gravely called Terry Headen back and Headen stated his girlfriend was in Bluefield. Gravely told Headen to have her meet him at Hardee's parking lot. This call was recorded on the Title III recording device and was call session number 3040. Officers conducted surveillance and observed Brooke Brown driving a gray Dodge Charger and John Gravely driving his black BMW. Brown got out of the vehicle and opened the trunk of the Charger. Gravely was behind the vehicle and Brown gave him an envelope with a red stripe. Officers followed Gravely from this meeting back to his apartment on Jefferson Street, Bluefield, West Virginia. Officers saw him park his black BMW and go into his apartment. Gravely then came out of the apartment and removed the cover on his GMC Yukon. Gravely loaded luggage into the rear of the Yukon. Gravely placed the white envelope with a red stripe in the rear of the Yukon.

j.  On June 1, 2007, Christopher Gross called Terry Headen from phone number (304) 887-4926. The cellular phone of Terry Headen was being monitored and recorded using a Title III recording device. On the recording Christopher Gross said he had just gotten 650 pills in and Gross wanted to know if Terry Headen wanted to purchase some. Headen advised Gross he would take all Gross had and Gross advised he had to keep 350 but he would sell Terry Headen 300 of the pills. This was call session number 258 on the Title III recording device. Law

4

enforcement then observed Gross and Terry Headen meeting with each other.

k.  On June 8, 2007, Terry Headen called Christopher Gross at (304) 448-2447, the residence phone number of Christopher Gross. The cellular phone of Terry Headen was being monitored and recorded using a Title III recording device and this was call session number 1180. Headen asked if the count was correct in his (Gross's) bag because his (Headen's) count was short.

l.  On June 11, 2007, Terry Headen called Christopher Gross at his residence on Highland Avenue, Gary, West Virginia. During the call Gross told Headen about information on the "Topix" website regarding the police not doing anything with the Headen organization and that citizens needed to start making citizens' arrests. This call was monitored and recorded on the Title III recording device and is phone session number 1461.

m.  On June 12, 2007, Christopher Gross called Terry Headen and during the conversation Headen advised Gross that John Gravely Jr. had called Headen and stated that he needed time to get more pills. This call was recorded on the Title III recording device on Terry Headen's cell phone and call session number 1591.

n.  On June 23, 2007, there was an incoming call from Christopher Gross's cellular phone number (304) 887-4926 to Terry Headen's cellular phone (304) 320-3105. During the call Gross advised Headen he anticipated getting 600 or 700 pills. This call was recorded on the Title III recording device call session number 2804.

o.  On June 26, 2007, Terry Headen called Christopher Gross. During the conversation Headen asked Gross if he had hidden or sold what he had. Headen advised Gross, "If they bust you, you don't know us." Gross answered, "Okay." This call was recorded on the Title III recording device on Terry Headen's cellular phone and was call session number 3144.

9. On or about July 6, 2007, law enforcement officers were conducting surveillance on John Gravely Jr.'s apartment in Bluefield, West Virginia. During the course of that surveillance officers observed a 2001 Cadillac Seville approaching the area. The Cadillac almost struck a marked police car and a chase ensued. The chase went from Mercer County into McDowell County and ended with a police road-block. During the chase the occupants threw hundreds of oxycodone pills out the passenger-side window, hundreds of which were recovered along the roadside. Also, once the car stopped, approximately 100 oxycodone pills and a handgun were seized inside the car. The occupants of the vehicle were arrested, including Terry Headen. Terry Headen was seated in the front passenger seat during the course of the chase and has charges pending in McDowell County resulting from the car chase and subsequent seizure of controlled substances.

10. On or about July 6, 2007, Jerry Headen, using Terry Headen's cell phone, had a telephone conversation with John Gravely Jr. regarding the chase and the loss of thousands of dollars worth of oxycodone pills during the chase. During that telephone conversation Jerry Headen assured Gravely that the Headen twins would make up the loss, and requested that Gravely supply them with more oxycodone as soon as possible. This call was recorded on the Title III recording device and is call session number 4118.

11. Based on my investigation, none of the above-referenced co-conspirators has legitimate employment. However, each has what appear to be significant financial resources including real estate, automobiles, and cash, much of which continues to be re-invested in more oxycodone.

WILLIAM T. JONES
Task Force Officer
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence, this 23rd day of July, 2007.

R. CLARKE VANDERVORT
United States Magistrate Judge

6